**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Wilcox and Jodi Jureen Wilcox, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>City of Phoenix, a municipality, et al.,<br><br>    Defendants. | No. CV 07-01875-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Defendants' Motion for Summary Judgment (Dkt.#21) and Defendants' Motion for Sanctions Under Fed.R.Civ.P. 37(c)(1) (Dkt.#23). After reviewing these motions and their accompanying papers, the Court issues the following Order.

**I.     Factual Background**

The following facts are undisputed. On October 18, 2004, Officer Wilcox was attempting to arrest a juvenile. (Dkt.#22 ¶ 14, Dkt.#27) Officer Wilcox claimed that after he chased the juvenile, the juvenile kicked him and escaped. (Dkt.#22 ¶ 14, Dkt.#27) Another officer captured the juvenile shortly thereafter and Officer Wilcox charged the juvenile with aggravated assault as a result of the altercation. (Dkt.#22 ¶ 14, Dkt.#27) The juvenile denied that he assaulted Officer Wilcox during the chase. (Dkt.#22 ¶ 15, Dkt.#27)

At the trial of the juvenile, neither Officer Wilcox nor the other officer appeared, and as a result, the case was dismissed. (Dkt.#22 ¶ 19, Dkt.#27)

An investigation into the arrest of the juvenile was begun by the Professional Standards Bureau (the "PSB"), a bureau within the Phoenix Police Department which investigates claims of police misconduct, after a third officer reported that Officer Wilcox demonstrated how he took the juvenile's shoe and made an imprint on his own police uniform in order to support the aggravated assault charge. (Dkt.#22 ¶¶ 5, 21; Dkt.#27) The third officer thought that Officer Wilcox was joking, but he was not sure. (Dkt.#22 ¶ 21, Dkt.#27)

Sgt. Johnson was assigned by PSB to lead the investigation. (Dkt.#22 ¶ 23, Dkt.#27) One of her duties was to develop proposed findings based on her investigation. (Dkt.#22 ¶ 23, Dkt.#27) On February 28, 2005, Sgt. Johnson and Detective Courtney first interviewed Officer Wilcox. (Dkt.#22 ¶ 26, Dkt.#27) Prior to the interview, Officer Wilcox was presented with and signed a Notice of Investigation. (Dkt.#22 ¶ 26, Dkt.#27) During the course of the investigation, these individuals interviewed Officer Wilcox on five occasions. (Dkt.#22 ¶ 27, Dkt.#27) Pursuant to Department policy, prior to each of these interviews, a Notice of Investigation was presented to Officer Wilcox. (Dkt.#22 ¶ 27, Dkt.#27) During these interviews, Officer Wilcox was only shown four photographs. (Dkt.#22 ¶ 27, Dkt.#27)

During the course of the PSB investigation, Plaintiff was served with four Notices of Investigation concerning the allegations against him: (1) untruthful statements to Deputy County Attorney Herb Kalish about Plaintiff's non-appearance for court on November 8 and 22, 2004, (2) providing false information related to the Juvenile's arrest in the departmental report, (3) not being truthful during a polygraph test on December 6, 2005, and (4) intentionally and unlawfully arresting the juvenile for aggravated assault and resisting arrest. (Dkt.#22 ¶ 28, Dkt.#27)

Sgt. Johnson and Detective Courtney also interviewed the juvenile during the course of the investigation. (Dkt.#22 ¶ 32, Dkt.#27) The juvenile denied kicking Officer Wilcox

and stated that when he was arrested, he saw Officer Wilcox without any footprint on his uniform's chest. (Dkt.#22 ¶ 32, Dkt.#27) The juvenile also submitted to a polygraph test; the report summary stated "No Deception Indicated." (Dkt.#22 ¶ 35, Dkt.#27) Officer Wilcox was asked to submit to a polygraph test as well; the summary of his polygraph test stated "Deception Indicated." (Dkt.#22 ¶ 36, Dkt.#27) In December 2005, Officer Wilcox was placed on paid administrative leave. (Dkt.#22 ¶ 37, Dkt.#27)

During the course of the investigation, Sgt. Johnson reviewed the photographs taken by Officer Jin at the scene of the juvenile's arrest. (Dkt.#22 ¶ 34, Dkt.#27) There were a number of photos that showed Officer Wilcox with scratches on his hands, arms, and knees, as well as dirt prints on the left side of his shirt made by a tennis shoe. (Dkt.#22 ¶ 34, Dkt.#27) There was also a photo of a dirt print made by a tennis shoe on the left side of Officer Wilcox's pants and photos of the juvenile's tennis shoes focusing on the tread. (Dkt.#22 ¶ 34, Dkt.#27)

On or about February 28, 2006, the preliminary investigative findings draft was completed by Sgt. Johnson. (Dkt.#22 ¶ 40, Dkt.#27) The draft preliminary findings sustained all charges against Officer Wilcox, specifically that he (1) engaged in unprofessional conduct by committing acts that constitute the elements of felony offenses, (2) that he provided false statements to a County Attorney in reference to a scheduled court date, (3) that he intentionally failed to appear in court regarding the case against the juvenile, (4) that he provided false, misleading, or incomplete statements or omissions during an administrative interview, and (5) that he provided false, misleading, or incomplete statements or omissions during a polygraph examination. (Dkt.#22 ¶ 40, Dkt.#27)

In early March, a copy of these findings was given to Officer Wilcox's representative, Mark Spencer, who submitted written comments about them. (Dkt.#22 ¶¶ 41, 42; Dkt.#27) In early April 2006, an Investigative Review Process ("IRP") meeting was held. (Dkt.#22 ¶ 43, Dkt.#27) During this meeting, Plaintiff and his representative spent several hours presenting their view of the evidence related to the allegations against Plaintiff and the draft preliminary investigative findings. (Dkt.#22 ¶ 43, Dkt.#27)

On or about July 18, 2006, the Notice of Findings for Internal Investigation ("Final Notice") of Sgt. Johnson's investigation was issued. The Final Notice advised Plaintiff of the following: (1) that "[o]n October 18, 2004, you engaged in unprofessional conduct by committing acts that constitute the elements of felony offenses"; (2) that Sgt. Johnson found that allegations that Officer Wilcox provided false statements to a County Attorney regarding a scheduled court dates were unfounded; (3), that "[o]n November 22, 2004, you intentionally failed to appear in Superior Court" for the juvenile case; (4) that "[o]n June 20, 2005, you provided false, incomplete, or misleading statements, or wilful omissions during an administrative interview"; and that (5) "[o]n December 6, 2005, you provided false, incomplete, or misleading statements, or wilful omissions during a polygraph examination." Apparently, the same day, a memorandum ("Final Report") stating that Police Chief Jack Harris sustained all of the findings mentioned above also was prepared. (Dkt.#22 ¶ 46, Dkt.#27)

On July 24, 2006, a copy of the Final Notice and Final Report were given to Officer Wilcox or his representative. (Dkt.#22 ¶ 47, Dkt.#27) Two days later, Officer Wilcox's Commander and the Division Commander recommended that his case be referred to the Discipline Review Board. (Dkt.#22 ¶ 48, Dkt.#27) Officer Wilcox began counseling for depression on August 21, 2006; he explained that he was emotionally stressed because he had been placed on administrative leave and he was fearful he would lose his job. (Dkt.#22 ¶¶ 49, 50; Dkt.#27) He was notified that his matter would be presented to the DRB on September 26, 2006. (Dkt.#22 ¶ 51, Dkt.#27)

On September 26, 2006, the DRB hearing was held. Lt. Finley recommended that Plaintiff be terminated. (Dkt.#22 ¶ 52, Dkt.#27) Plaintiff was represented by his Phoenix Law Enforcement Association ("PLEA") representative, but did not personally attend the hearing because his counselor had recommended that he stay at home and not be involved in police matters (although the counselor was not consulted specifically about Officer Wilcox attending the DRB hearing). (Dkt.#22 ¶¶ 52, 53; Dkt.#27) Four photographs, including the photograph of the foot print on Plaintiff's uniform chest, were shown to the DRB. (Dkt.#22

¶ 52, Dkt.#27) No other photographs were shown to the DRB. (Dkt.#22 ¶ 52, Dkt.#27) The DRB voted to terminate Officer Wilcox and the decision was communicated to his PLEA representative. (Dkt.#22 ¶ 52, Dkt.#27)

Plaintiff was also accused of damaging an apartment and harassing an individual. (Dkt.#22 ¶ 54, Dkt.#27 ¶ 54) Sgt. Johnson was assigned to investigate these allegations. While the parties dispute the number of photographs that were taken at the scene of the alleged misconduct, with Defendants claiming that 120 photographs were taken and Officer Wilcox claiming that at least 156 photographs were taken, there does not appear to be any genuine issue of material fact that when Sgt. Johnson interviewed Officer Wilcox about the incident, she only showed him 10 or 12 of these photographs. (Dkt.#22 ¶ 54, Dkt.#27 ¶ 54) Because the photographs were taken a month after the incident, Officer Wilcox was not initially aware of how many photographs had been taken. (Dkt.#22 ¶ 54, Dkt.#27 ¶ 54) Sgt. Johnson's investigation sustained the finding of misconduct. (Dkt.#22 ¶ 54, Dkt.#27 ¶ 54) The issue of discipline was brought before the DRB, and it was decided that a suspension would be imposed. (Dkt.#22 ¶ 54, Dkt.#27 ¶ 54) Officer Wilcox appealed the DRB's decision to the CSB, which sustained the findings of the violation and affirmed the 90-hour suspension. (Dkt.#22 ¶ 54, Dkt.#27 ¶ 54)

Before Plaintiff was suspended, he complained through his representative that Sgt. Johnson had not disclosed all relevant photographs uncovered during her investigation of the damage allegation. (Dkt.#22 ¶ 55, Dkt.#27) Plaintiff was terminated by the City of Phoenix effective November 28, 2006. (Dkt.#22 ¶ 55, Dkt.#27) Notice of the discipline for the damage incident was given to Officer Wilcox and he was advised of his right to appeal his termination. (Dkt.#22 ¶ 55, Dkt.#27) Prior to his termination on November 28, 2006, neither Officer Wilcox nor his representative ever requested a copy of all of the photographs that had been taken by Officer Jin and which were a part of the Department's public records. (Dkt.#22 ¶ 57, Dkt.#27) On November 28, 2006, Officer Wilcox appealed his termination to the Civil Service Board. (Dkt.#22 ¶ 58, Dkt.#27) In early January 2007, Plaintiff's lawyer requested all photos taken after the arrest of the Juvenile, and these photographs were

produced on January 26, 2007. (Dkt.#22 ¶ 60, Dkt.#27) Officer Wilcox did not see all of the photographs until the day of the hearing when his attorney showed them to him. (Dkt.#22 ¶ 61, Dkt.#27)

On February 5, 2007, a contested hearing on Plaintiff's appeal was held before Hearing Officer Cecil Paterson, Jr. (Dkt.#22 ¶ 62, Dkt.#27) The Hearing Officer issued his report on February 28, 2007 and concluded that Officer Wilcox had no recognizable reason or excuse for missing the juvenile's delinquency hearing on November 22, 2004 in violation of Personnel Rules and Operational Orders. (Dkt.#22 ¶ 63, Dkt.#27) However, the Hearing Officer concluded that the remaining charges were not proven by a preponderance of the evidence. (Dkt.#22 ¶ 63, Dkt.#27) The Hearing Officer indicated that all of the relevant information was not provided to the DRB because only one photograph was presented to them. (Dkt.#22 ¶ 63, Dkt.#27) The Hearing Officer concluded that Sgt. Johnson improperly arrived at a decision on the charges before the City administered its polygraph test and that the results merely substantiated her conclusion, which reflected a bias by Sgt. Johnson, who had to make a recommendation to the DRB. (Dkt.#22 ¶ 63, Dkt.#27) The Hearing Officer recommended that the matter be remanded to the Department to allow for a reopened, unbiased investigation of the remaining allegations. (Dkt.#22 ¶ 64, Dkt.#27)

On March 5, 2007, the Civil Service Board considered Plaintiff's appeal and the Hearing Officer's Report. (Dkt.#22 ¶ 64, Dkt.#27) On May 10, 2007, the Civil Service Board found that Officer Wilcox had no recognizable or excuse for missing the juvenile's delinquency hearing and imposed a 120-hour suspension on Officer Wilcox for the violation. (Dkt.#22 ¶ 67, Dkt.#27) The CSB concluded that the remaining charges were not proven by a preponderance of the evidence. (Dkt.#22 ¶ 67, Dkt.#27)

On May 25, 2007, Officer Wilcox served a notice of claim upon the City and Sgt. Johnson. (Dkt.#22 ¶ 68, Dkt.#27) After the CSB's reinstatement, Officer Wilcox returned to work for the Department. However, he resigned in July 2007 and began working as a police officer in Missouri. (Dkt.#22 ¶¶ 69, 70; Dkt.#27)

Officer Wilcox and Jodi Wilcox filed a complaint in Superior Court against Sgt. Johnson and the City of Phoenix on September 7, 2007, alleging (1) the deprivation of Officer Wilcox's civil rights in violation of 42 U.S.C. § 1983, (2) tortious interference with employment relations, (3) defamation, and (4) intentional infliction of emotional distress. (Dkt.#1, Dkt.#22 ¶ 71, Dkt.#27) This action was later removed to federal court. (Dkt.#22 ¶ 71, Dkt.#27) It is undisputed that no one has told Officer Wilcox that he was not under consideration for hiring because of the things that happened while he was employed by the City of Phoenix. (Dkt.#22 ¶ 72, Dkt.#27) It is further undisputed that Sgt. Johnson has had no communication with any police departments or governmental agencies about Officer Wilcox. (Dkt.#22 ¶ 73, Dkt.#27)

**II.     Motion for Summary Judgment**

    **A.     Standard of Review**

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Court views the evidence in the light most favorable to the nonmoving party and draws any reasonable inferences in the nonmoving party's favor. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). A material issue of fact is one that affects the outcome of the litigation and requires trial to resolve differing versions of truth. S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). To defeat the motion, the non-moving party must show there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

    **B.     The § 1983 Claim**

1    Defendants argue that Plaintiff has no valid claim under 42 U.S.C. § 1983 because (1) he was not denied procedural due process, (2) he has no valid substantive due process claim, (3) there was no official policy or custom that would enable the City of Phoenix to be held liable for a § 1983 claim under a respondeat superior theory, and (4) Sgt. Johnson is protected by qualified immunity. (Dkt.#21 at 1-9)

Plaintiff responds by arguing that the City violated its own MOU (Memorandum of Understanding) by failing to give him the opportunity to review all of the evidence that the City collected. (Dkt.# 28 at 1-4) He further argues that the City's de facto official policy was deliberate indifference to the continued violation of officers' due process rights. (Dkt.#28 at 4-6). Finally, he relies on Fourth Amendment case law to argue that Sgt. Johnson's deliberate omission of exculpatory evidence disqualifies her from immunity.

**(1)    Procedural Due Process**

Under Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985), the due process clause of the United States Constitution entitles public employees who are terminable only for cause to notice and the opportunity to respond to charges of cause for termination. However, due process requires only that this pre-termination hearing afford the employee of notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond. Id. When an employee is afforded these procedural protections, there is no due process violation. Hibbs v. Department of Human Resources, 273 F.3d 844, 873 (9th Cir. 2001).

Here, Officer Wilcox does not dispute that he was provided pre-termination notice of the charges against him, an explanation of the evidence against him, and an opportunity to be heard on these charges. Instead, he argues that the City violated a Memorandum of Understanding by failing to allow him to review the entire file prior to the hearing. However, this argument fails for a number of reasons. First, "[t]he Due Process Clause does not guarantee that parties in an adversarial proceeding may discover every piece of evidence they desire." Tonkovich v. Kansas Board of Regents, 159 F.3d 504 (10th Cir. 1998) (rejecting discharged law professor's § 1983 claim where a Dean never disclosed the "blatantly false"

statements of a law student who complained that a law professor engaged in sexual acts after discussing grading issues). Plaintiff never addresses <u>Tonkovich</u> in his Response. Next, even in a criminal context, courts have found that there is no duty on the part of a testifying investigative witness to disclose exculpatory evidence to a grand jury. <u>See</u> <u>United States v. Williams</u>, 504 U.S. 36, 51-52 (1992). Plaintiff's pre-termination proceedings are analogous to criminal grand jury proceedings. For the same reason, even if Sgt. Johnson was biased, as long as the decision maker at the post-termination hearing was impartial, there is no procedural due process violation. <u>Walker v. City of Berkeley</u>, 951 F.2d 182, 184 (9th Cir. 1991). Finally, Plaintiff could have requested the photographs, but chose not to. Neither the City nor Sgt. Johnson were under a Constitutional duty to disclose all evidence related to the charges against Plaintiff before the City decided to impose discipline. For all of these reasons, Plaintiff has no viable procedural due process claim against the Defendants.

**(2) Substantive Due Process**

A threshold requirement to a substantive due process claim is the showing of a fundamental liberty or property interest protected by the Constitution. <u>Enquist v. Oregon Department of Agriculture</u>, 478 F.3d 985, 997 (9th Cir. 2007). Most federal courts have held that a public employee's state law created right to employment is not a fundamental interest entitled to substantive due process under the Constitution. <u>See</u> <u>Nicholas v. Pennsylvania State University</u>, 227 F.3d 133, 142-43 (3d Cir. 2000) (citing cases from the Second, Fourth, Seventh, Eighth and Eleventh Circuits). The Ninth Circuit has expressly limited such claims to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" <u>Enquist</u>, 478 F.3d 985 (9th Cir. 2007) (explaining that "[i]t is not enough that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects; instead, the employee must show that the stigmatizing actions make it virtually impossible for the employee to find new employment in his chosen field.").

1 Plaintiff does not respond to these arguments and essentially concedes by his silence that he
2 has no valid substantive due process claim.

### (3) The City's Alleged "Deliberate Indifference"

For municipal liability to exist under a "deliberate indifference" theory, a plaintiff must establish a constitutional right of which they were deprived and demonstrate that the municipality had a custom or policy that amounts to deliberate indifference to the right and that the policy or custom was a motivating force behind the constitutional violation. Miller v. California, 355 F.3d 1172, 1176-77 (9th Cir. 2004). Where no constitutional right has been violated, a claim of deliberate indifference fails as a matter of law. Id. Here, there is no allegation of a constitutional violation; merely a claim that the MOU was violated. This is insufficient to establish § 1983 liability for the City. The violation of the MOU might provide a basis for another theory of recovery; however, it does not provide a basis for a § 1983 claim.

### (4) Sgt. Johnson and Qualified Immunity

Qualified immunity shields government officials performing discretionary functions from liability for civil damages, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, ____ U.S. ___, 2009 WL 128768 at *6 (Jan. 21, 2009). As explained above, there was no violation of Officer Wilcox's federally protected rights. But even assuming for purposes of argument that this requirement were met, Plaintiff has failed to cite to a single case that would have required the disclosure of all evidence in Sgt. Johnson's report of her pre-termination findings. See Tonkovich, 159 F.3d 504, 518-20 (10th Cir. 1998). The two cases cited by Plaintiff, Liston v. County of Riverside, 120 F.3d 965 (9th Cir. 1997) and Lombardi v. City of El Cahon, 117 F.3d 1117 (9th Cir. 1997) deal with Fourth Amendment issues relating to misleading affidavits used to obtain a search warrant based on a showing of probable cause. These cases are unrelated to the employment issues at hand. For these reasons, Sgt. Johnson is protected by qualified immunity from Plaintiff's § 1983 claim.

1   For the reasons explained above, Defendants motion for summary judgment is granted
2   insofar as Plaintiff's § 1983 claim is concerned.

3   **C.    The Defamation Claim**

4   Defendants argue that Plaintiff's defamation claim is barred by the notice of claims
5   statute and by Arizona's statute of limitations for defamation claims. They further argue that
6   Plaintiff has failed to present any evidence of actual malice, notwithstanding that Plaintiff
7   would have the burden of proving actual malice by clear and convincing evidence at trial.

8   Plaintiff fails to respond to the "actual malice" argument and instead challenges the
9   date on which his cause of action for defamation accrued. He argues that it did not accrue
10  until he discovered the additional photographs on January 26, 2007.

11  Under Arizona law, the statute of limitations for defamation is one year. See A.R.S.
12  § 12-541. Arizona's general defamation rule provides that a defamation action accrues -- and
13  the statute of limitations begins to run -- upon publication of the defamatory statement.
14  Boatman v. Samaritan Health Services, Inc., 168 Ariz. 207, 812 P.2d 1025, 1031 (App.
15  1990). Thus, Plaintiff's arguments that the defamation action did not accrue until he was
16  fired or until he discovered the missing photographs[1] are unavailing. Because this lawsuit
17  was filed on September 7, 2007, any alleged defamation that occurred before September 6,
18  2007 is time barred under A.R.S. §§ 12-821, 12-541(1). However, this does not entirely
19  dispose of the defamation claim because Plaintiff was not fired until November 28, 2006.
20  Thus, there is an approximately two and one half month long window where alleged
21  defamatory statements leading up to Plaintiff's termination would still be actionable.

22  The second ground for which Defendants seek summary judgment regarding the
23  defamation claim, however, is dispositive. Plaintiff does not dispute that a police officer is

---

[1] As Defendant points out, the date of the discovery of the missing photographs has nothing to do with any allegedly defamatory statement. To be defamatory, a statement must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach Plaintiff's honesty, integrity, virtue or reputation. Turner v. Devlin, 174 Ariz. 201, 203-04, 848 P.3d 286, 288-89 (1993).

1  considered a public official for the purposes of a defamation claim. Lewis v. Oliver, 178
2  Ariz. 330, 336, 873 P.3d 668, 674 (App. 1993). Officer Wilcox therefore must show actual
3  malice by clear and convincing evidence in order to recover on his defamation claim. Id. Nor
4  does Plaintiff dispute that the burden of showing actual malice is on the Plaintiff, who must
5  prove scienter (or actual malice) by clear and convincing evidence even on a motion for
6  summary judgment. Carboun v. City of Chandler, 2005 WL 2408294 at *8 (D. Ariz. 2005).
7  Yet, Plaintiff has failed to present any evidence whatsoever that the allegedly defamatory
8  statements were made with a knowledge (or reckless disregard) of their falsity. In fact,
9  Plaintiff has even failed to precisely identify which statements in particular he alleges to be
10 defamatory. Because of this failure, it is impossible to identify the precise dates on which
11 the defamatory statements were made. Courts are not obligated to "scour the record in search
12 of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)
13 (citation omitted); see Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029
14 (9th Cir. 2001); Forsberg v. Pac. N.W. Bell Tel. Co., 840 F.2d 1409, 1417-18 (9th Cir. 1988).
15 Rather, courts rely on "the nonmoving party to identify with reasonable particularity the
16 evidence that precludes summary judgment." Keenan, 91 F.3d at 1279; Best Western Int'l,
17 Inc. v. Furber, 2008 U.S. Dist. LEXIS 70552, *22-23 (D. Ariz. Sept. 5, 2008). In this case,
18 not only has Plaintiff failed to identify the dates the statements were made, Plaintiffs have
19 failed to address the statements at all. Therefore, Defendants' Motion for Summary
20 Judgment on Plaintiff's defamation claim is granted.

### D. The Intentional Infliction of Emotional Distress Claim

22 Defendant claims that Plaintiff's claim for intentional infliction of emotional distress
23 is time-barred by A.R.S. § 12-821.01, Arizona's notice of claims statute, which requires
24 claims against a public entity or public employee to file claims within 180 days after the
25 cause of action accrues. Defendant argues that this would limit Plaintiff to claims that
26 accrued after November 25, 2006. However, this time limit would still include Plaintiff's
27 November 28, 2006 termination date as well as Plaintiff's subsequent discovery of the
28 exculpatory photographs on January 26, 2007. The Court rejects Defendants' argument that

1 because Plaintiff had already begun to receive counseling for emotional distress arising out of the investigation before November 25, 2006, his claim for intentional infliction of emotional distress is time-barred. The fact that Plaintiff had already suffered to some degree from the investigation does not necessarily bar his claim for the emotional distress that occurred after he was fired and ultimately discovered the exculpatory photographs.

However, there is a more fundamental difficulty with Plaintiff's claim; it does not appear to be extreme and outrageous enough to qualify for this tort. The elements of a claim for intentional infliction of emotional distress include: (1) conduct which is extreme and outrageous, (2) that was intentionally and recklessly performed and (3) causes severe emotional distress. Johnson v. McDonald, 197, Ariz. 155, 160, 3 P.3d 1075, 1080 (App. 1999). This tort is aimed at vindicating wrongs that are "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded [as] atrocious and utterly intolerable in a civilized community." Country Escrow Service v. Jones, 121 Ariz. 511, 513, 591 P.2d 999, 1001 (App. 1979). The initial determination of whether conduct is extreme and outrageous is an issue for the court, and only if reasonable minds could differ should the issue be left to a jury. Johnson, 197, Ariz. at 160, 3 P.3d at 1080 (App. 1999). In the employment context, Arizona courts have repeatedly held that the mere fact that one is subject to discipline, non-renewal and/or termination is insufficient to support an intentional infliction of emotional distress claim. See, e.g., Wallace v. Casa Grande Union High School District No. 82 Board of Governors, 184 Ariz. 419, 428, 909 P.2d 486, 495 (App. 1995); Nelson v. Phoenix Resort Corp., 181 Ariz. 188, 199, 888 P.2d 1375, 1385 (App. 1994). While Officer Wilcox's investigation and termination are regrettable, they simply do not rise to the level of conduct that is "so extreme in degree as to go beyond all possible bounds of decency" that it is "utterly intolerable in a civilized community." For this reason, Defendants' motion for summary judgment regarding Plaintiff's claim for intentional infliction of emotional distress is granted.

**E.    Plaintiff's Spouse's Claim**

1  Plaintiff does not dispute Defendants' assertion that Officer Wilcox's spouse has no viable claim for emotional distress. Arizona does not recognize a claim for emotional distress for persons who merely witnessed another person being injured, unless the claimant was also within the zone of danger. See Keck v. Jackson, 122 Ariz. 114, 115-16, P.2d 668, 669-70 (1979). Here, there is no allegation that Plaintiff's spouse was within the zone of danger. Moreover, as explained above, Plaintiff has no viable claim for intentional infliction of emotional distress, making it impossible for Plaintiff's spouse's derivative claim for intentional infliction of emotional distress to succeed. As such, summary judgment is granted to Defendants regarding this point.

### F. The Claim for Punitive Damages

Defendants argue that no claim for punitive damages can survive because federal and state law prohibits such claims against a city. They further argue that state law protects Sgt. Johnson from punitive damages for actions taken while in the course of her employment. Plaintiffs fail to respond to these arguments.

Under 42 U.S.C. § 1981a(b)(1), punitive damages are not recoverable against governmental entities or political subdivisions. Arizona state law also precludes a claim for punitive damages against the city. A.R.S. § 12-820.04 ("Neither a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages.") Since Sgt. Johnson is a public employee who was employed to conduct an investigation of Plaintiff, she was acting within the scope of her employment when investigating Plaintiff. Thus, Defendants are entitled to summary judgment regarding Plaintiff's claim for punitive damages as well.

### G. Conclusion

In summary, Defendants have obtained summary judgment on Plaintiff's § 1983 claim, the defamation claim, and the claim for intentional infliction of emotional distress. It appears that the only remaining claim in this litigation is Plaintiff's claim for tortious interference with employment relations (count two of the complaint), a claim that arises under state law. Kraus v. Santa Fe Southern Pacific Corp., 878 F.2d 1193, 1199 (9th Cir.

1989) (noting that tortious interference with an economic relationship is a state law claim); see also Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 710 P.2d 1025 (Ariz. 1985) (superseded by statute on other grounds) (recognizing that supervisor may be liable for tortious interference with an employment contract under certain circumstances); see also Bernstein v. Aetna Life & Cas., 843 F.2d 359, 367 (9th Cir. 1987) (relying on Wagenseller and rejecting the claim that a supervisor can never be liable for tortious interference with an employment).

A district court should dismiss a supplemental state law claim where all of the claims over which it had original jurisdiction have been dismissed. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27 (1966); see also 28 U.S.C. § 1367(c)(3) (codifying Gibbs and explaining that a district court may decline to exercise supplemental jurisdiction over a state law claim when all federal claims upon which jurisdiction was based have also been dismissed). As the Supreme Court noted, "in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Here, all federal claims over which this Court had original jurisdiction have been dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. As such, it is dismissed without prejudice.

**III.    Sanctions**

Defendants seek to exclude the expert testimony of Plaintiff's expert, Mark Spencer, on the grounds that no disclosure was made of his expert report by the discovery deadline. Prior to the discovery deadline, Plaintiff identified Mark Spencer as an expert witness. Mr. Spencer was Officer Wilcox's representative in the proceedings before the Disciplinary Review Board and the appeal to the Civil Service Board. The disclosure indicated that Spencer would offer expert testimony regarding the policies and standards for internal

1 investigations and whether the investigation was conducted in accordance with accepted
2 police procedures.

3 Defendants assert that Mr. Spencer was "required to prepare, and opposing counsel, required to produce, a written report" by the discovery deadline (which was October 31, 2008). Since that date has passed, they argue that he should be precluded from testifying at trial. Plaintiff respond by contending that because Mr. Spencer did not fit within the Rule 26(a)(2)(B) conditions, he was not required to submit an expert report.

Federal Rule of Civil Procedure 26(a)(2)(B) states that "[e]xcept as otherwise stipulated or directed by the court, this disclosure [of expert testimony] shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness." This rule requires only two categories of experts to submit expert reports: (1) those who are retained or specifically employed to provide expert testimony in the case and (2) those whose duties as an employee of the party regularly involve giving expert testimony.

Plaintiff submitted an affidavit by Mr. Spencer that made it clear that he was not retained or specifically employed to provide expert testimony in this case. (Dkt.#24-1) The affidavit also stated that Mr. Spencer was employed by Defendant City of Phoenix. Since Plaintiff is the party offering Mr. Spencer's testimony, it is clear that the second condition does not apply. Mr. Spencer is not an employee of Officer Wilcox, the party offering him as an expert. Thus, Rule 26(a)(2)(B) does not require Mr. Spencer to submit a written report.

Because Rule 26(a)(2)(B) was not violated, Rule 37(c)(1) does not apply. Defendants apparently concede this point by failing to submit any Reply or citing to any other rule that would require Mr. Spencer to submit an expert report. As such, Defendants' Motion for Sanctions under Rule 37(c)(1) is denied.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' Motion for Summary Judgment. (Dkt.#21)

**IT IS FURTHER ORDERED** denying Defendants' Motion for Sanctions under Rule 37(c)(1). (Dkt.#23)

**IT IS FURTHER ORDERED** dismissing Plaintiff's claim for tortious interference with employment relations without prejudice. (Dkt.#1)

**IT IS FURTHER ORDERED** directing the Clerk of Court to close this case.

**JUDGEMENT ENTERED ACCORDINGLY.**

DATED this 25th day of September, 2009.

_____
Mary H. Murgula
United States District Judge